INLAND STEEL MORTGAGE ACCEPTANCE CORPORATION, Plaintiff-Appellant, v. RICHARD J. CARLSON, Director of the Illinois Environmental Protection Agency, Defendant-Appellee.

Second District   No. 2—86—0782

Opinion filed April 17, 1987.—Rehearing denied May 19, 1987.

892

Thomas F. Geselbracht and John Chen, both of Rudnick & Wolfe, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Henry L. Henderson, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Inland Steel Mortgage Acceptance Corporation, a Delaware corporation, appeals from the order of the circuit court of Du Page County dismissing its three-count complaint for declaratory judgment against defendant, Richard J. Carlson, Director of the Illinois Environmental Protection Agency (IEPA), because the circuit court did not have subject matter jurisdiction over the action.

Plaintiff raises the following issue for our review: whether the trial court has subject matter jurisdiction to entertain plaintiff's action challenging the IEPA's authority to use void planning boundaries and to create unauthorized rules concerning the granting of sewage permits under the Environmental Protection Act (Act) (Ill. Rev.

Stat. 1985, ch. 111½, par. 1001 *et seq.*).

Plaintiff owns a 57-acre tract of unimproved real estate in Du Page County located entirely within the corporate boundaries of the city of Warrenville and plans to develop the land with single-family homes. Before developing the property, however, it is necessary in Illinois to obtain a permit for the discharge of sewage pursuant to the Act and the National Pollutant Discharge Elimination System (NPDES) of the Federal Clean Water Act (33 U.S.C.A. sec. 1342 (West 1986)). There are two existing sewage-treatment facilities, one located in Naperville and the other located in West Chicago, available to plaintiff to connect to in order to dispose of the sewage from the area.

In Illinois, the IEPA has the authority to grant or deny NPDES permits. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(b).) The Clean Water Act requires the administering State agency to promulgate a "Water Quality Management Plan" (WQMP) establishing the boundaries for sewage-treatment systems, including treatment facilities and interconnecting sewer systems (33 U.S.C.A. sec. 1288 (West 1986)), and this responsibility has been given to the IEPA (Ill. Rev. Stat. 1985, ch. 111½, par. 1004(m)). These boundaries determine to which treatment facility the sewer system of a newly developed property must connect.

In administering the WQMP for northeastern Illinois, the IEPA and its regional administration agency, the Northeastern Illinois Planning Commission (NIPC), utilize the Facility Planning Areas (FPA) boundaries originally created by the Pollution Control Board (PCB) in its 1974 regionalized sewage-treatment program of Du Page County. According to these boundaries, approximately half of plaintiff's tract of land lies in the Naperville-Warrenville FPA, while the other half of the tract lies in the West Chicago FPA. Plaintiff maintains that it would be much more economical to connect to the Naperville treatment plant, as an existing sewer line from that plant extends to within a few hundred feet of the property, rather than to the West Chicago treatment plant, as an extensive amount of sewer line with a pumping facility would be required. Both Warrenville and Naperville have agreed to such a plan.

When plaintiff went before the Du Page County Regional Planning Commission to seek approval of this plan, however, West Chicago requested the county commission to table the issue, and the commission has since refused to consider the matter. The NIPC has also refused to resolve this boundary issue at the request of West Chicago. Plaintiff has also asked the IEPA to clarify the boundary question to avoid any future difficulties when applying for an NPDES permit for

its development. In a letter to a representative of plaintiff, an officer of the IEPA stated that the agency encouraged local settlement of conflicts without IEPA involvement whenever possible and that "[t]he cities of Warrenville, Naperville and West Chicago must concur on an intergovernmental service agreement before a sewer permit for [plaintiff] may be granted."

In an attempt to resolve the issue of which treatment plant it would connect to, plaintiff filed a complaint for declaratory relief. After defendant successfully moved to dismiss the complaint, plaintiff filed an amended three-count complaint. Count I requested the court to declare the IEPA's use of the void FPA boundaries in Du Page County unconstitutional, count II requested the court to declare the IEPA's refusal to process an NPDES permit application without the "intergovernmental service agreement" unconstitutional and void, and count III requested the court to declare unconstitutional the IEPA's use of the FPA boundary, which served to bisect plaintiff's property, in determining where sewage must be sent. Each count sought a declaration that the IEPA's use of the FPA boundaries be declared null and void and requested an injunction ordering defendant to review any NPDES applications from plaintiff according to whether plaintiff will comply with effluent standards and without regard to the FPA boundaries.

Defendant moved to dismiss the amended complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(1)), contending that the circuit court lacked subject matter jurisdiction to consider an alleged wrongful refusal of the IEPA to grant an NPDES permit because the power for such a review was given by the legislature to the PCB under section 40 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1040), and pursuant to section 2—615 (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), contending that the complaint is factually insufficient to state a cause of action because plaintiff has never applied for an NPDES permit, thereby prohibiting defendant from wrongfully refusing to review such an application. After the parties submitted memoranda and presented oral arguments, the trial court granted defendant's motion to dismiss because it determined that it lacked subject matter jurisdiction to hear the cause.

While both parties agree that sections 40 and 41 of the Act provide the exclusive remedy to a party who has been denied a permit, they disagree as to the nature of the relief sought in the present action. Plaintiff argues that as it has never applied for a permit, it is not in a position to avail itself of this remedy. It contends that it is

not seeking an NPDES permit in this action, but is seeking to have the circuit court declare invalid certain unauthorized standards and conditions created and enforced by the IEPA for the NPDES permit review process involving plaintiff's property.

Specifically, plaintiff maintains that these unauthorized standards and conditions are: (1) the IEPA's continued use of the FPA boundaries established by the PCB and later voided by the Illinois Supreme Court; (2) the IEPA's requirement that plaintiff enter into an intergovernmental service agreement before the IEPA will review any NPDES permit application by plaintiff; and (3) the IEPA's use of the FPA boundaries, which bisect plaintiff's property. Thus, plaintiff contends that the circuit court action attacks the IEPA's authority to enforce the void FPA boundaries and to require an intergovernmental service agreement as a condition to a permit application and, relying on *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258, argues that the exhaustion of administrative remedies is not required in this case and that the circuit court has jurisdiction. Defendant, on the other hand, contends that the object of the lawsuit is, in reality, a dispute over an alleged NPDES permit decision of the IEPA and, therefore, the trial court lacked subject matter jurisdiction over this matter pursuant to the Act.

The IEPA is charged with the initial decision of whether to grant an NPDES permit. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(b).) If an applicant is denied a permit, section 40 of the Act provides for review by the PCB. (Ill. Rev. Stat. 1985, ch. 111½, par. 1040(a)(1).) Any party to a PCB hearing, any person who was denied a PCB hearing, any person who has been denied a variance or permit under the Act, and any party adversely affected by a final order or determination of the PCB may obtain judicial review by filing a petition for review pursuant to the Administrative Review Act (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*), except that review shall be afforded directly in the appellate court for the district in which the cause of action arose and not in the circuit court (Ill. Rev. Stat. 1985, ch. 111½, par. 1041(a)).

■■■ It is evident from these statutory provisions that if plaintiff's declaratory judgment action involves a decision concerning whether to grant an NPDES permit, then jurisdiction would not lie in the circuit court. The decision to grant a permit is first determined by the IEPA, review is then taken to the PCB, and judicial review of the decisions is in the appellate court. The general rule is that a party must exhaust its administrative review remedies, including *certiorari*, before seeking equitable relief. (*Newkirk v. Bigard* (1985), 109 Ill. 2d

28, 35, 485 N.E.2d 321; *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 549-50, 387 N.E.2d 258.) An exception to the general rule exists, however, where the agency rule or order is being challenged on its face as not being authorized by statute. (*Newkirk v. Bigard* (1985), 109 Ill. 2d 28, 35, 485 N.E.2d 321; *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 550, 387 N.E.2d 258; see also *County of Kane v. Carlson* (1986), 140 Ill. App. 3d 814, 489 N.E.2d 467, *aff'd* (1987), 116 Ill. 2d 186.) Exhaustion of administrative remedies is not required where a statute or rule under which an administrative body purports to act is challenged as unauthorized because the judicial determination will affect the jurisdiction of the administrative body in all matters, not only in the instant circumstances. *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 550, 387 N.E.2d 258.

Plaintiff argues that as it has not yet sought a permit, the declaratory judgment action is properly brought first in the circuit court because the suit challenges unauthorized standards and conditions set by the IEPA. In this regard, plaintiff, in count I of its declaratory judgment action, attacks the IEPA's use of FPA boundary lines in deciding whether to grant or deny a permit application because the FPA boundaries were held void in *Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 363 N.E.2d 814, and the IEPA and NIPC have never "independently promulgated or established FPA boundaries in Du Page County." We must determine whether this allegation attacks the IEPA's authority to promulgate a rule and exercise jurisdiction over this matter.

In *Village of Lombard v. Pollution Control Board,* the PCB promulgated a regulation whereby it divided Du Page County into nine water-treatment regions, alleged to be the same regions with the same boundaries as presently exist. Our supreme court held that the PCB lacked the statutory authority to promulgate the regulation requiring regional water-treatment plans. (66 Ill. 2d 503, 508-09, 363 N.E.2d 814.) The decision did not consider, however, whether the actual boundaries of the regions were improperly formulated, but only held that the PCB did not have statutory authority to issue the regulation requiring these regions.

■ ■ As stated earlier, the Clean Water Act requires the administering State agency to promulgate a "Water Quality Management Plan" establishing the boundaries for sewage-treatment systems, including treatment facilities and interconnecting sewer systems (33 U.S.C.A. sec. 1288 (West 1986)), and this responsibility has been given to the IEPA by statute (Ill. Rev. Stat. 1985, ch. 111½, par. 1004(m)).

Thus, while the PCB did not have the statutory authority to promulgate the regulation requiring water-treatment regions (*Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 363 N.E.2d 814), it is clear that the IEPA does have the statutory authority to formulate these regions and their boundaries.

There is nothing in the *Village of Lombard* decision which decides whether the actual boundaries, while improperly created by the PCB, are not properly drawn. Therefore, the *Village of Lombard* decision, which decided only that the PCB was without statutory authority to enact a regulation requiring the regional treatment of waste water, is not controlling.

■ We do not interpret plaintiff's complaint as challenging the authority of the IEPA to establish such waste water-treatment regions under the Clean Water Act and the Illinois Environmental Protection Act. Rather, the attack is on the use of the boundaries originally created by the PCB. As the IEPA has the statutory authority to create these regions, the use of the boundaries already established, albeit by the PCB which was itself without authority to do so, is within this statutory authority. Plaintiff does not cite to any rule of the IEPA which it claims the agency was without authority to enact. As count I of plaintiff's complaint does not attack the agency's assertion of jurisdiction on its face or in its entirety on the ground that it is not authorized by statute (see *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 549-50, 387 N.E.2d 258), this count must fail as plaintiff has not exhausted its administrative remedies.

■ ■ Similarly, count III challenges the validity of the boundary lines, but appears to attack, in addition, the creation of these boundaries as applied because of the way in which the boundaries bisect plaintiff's property. An attack on the constitutionality of a statute as applied, rather than on its face, must be made before the administrative agency in the first instance, as the validity or invalidity of such a statute depends almost wholly upon a determination of factual matters in which the specialized agency is thought to be more proficient. (See *County of Kane v. Carlson* (1986), 140 Ill. App. 3d 814, 817, 489 N.E.2d 467, *aff'd* (1987), 116 Ill. 2d 186.) If a statute is valid on its face but is applied in a discriminating or arbitrary manner, the challenging party must pursue administrative remedies before seeking judicial relief. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552, 359 N.E.2d 113.) Count III constitutes a collateral attack upon an agency's decision without first exhausting the available administrative remedies and must also fail.

■ Finally, as to count II of the complaint, plaintiff has alleged

that the IEPA was without authority to refuse to process its NPDES permit application until plaintiff had obtained an intergovernmental agreement from the municipalities in the two FPAs in which plaintiff's property is situated. Although plaintiff has not pointed out any rule or regulation of the IEPA which mandates this procedure before securing a permit, plaintiff relies on a letter written by an agent of the IEPA in which a manager of the permit section states, in pertinent part, that the agency "encourages local settlement of conflicts without IEPA involvement whenever possible *** and the cities of Warrenville, Naperville, and West Chicago must concur on an intergovernmental service agreement before a sewer permit for the Inland Steel property may be granted."

This letter, however, is a response to a communication from plaintiff, and it appears to address the problem of plaintiff's property's being within two FPAs and attempts to seek an agreement by the involved municipalities before it will grant a permit under these circumstances. This clearly is not a general rule or regulation of the agency applying to all applicants which can be attacked on its face as being unauthorized by statute, but is merely correspondence affecting only plaintiff. Fact finding is necessary to determine whether such a condition is necessary or appropriate under the facts of this case. (See *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 550, 387 N.E.2d 258.) Plaintiff may eventually seek judicial review of any adverse decision on its permit application in which this intergovernmental agreement requirement may have some bearing. (*Cf. Environmental Protection Agency v. Pollution Control Board* (1986), 115 Ill. 2d 65, 68-69, 503 N.E.2d 343.) Plaintiff, however, is first required to exhaust its administrative remedies before bringing this action and, therefore, count II must also fail.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH and UNVERZAGT, JJ., concur.