WILLIAM A. GRAY

*v.*

ELIOT CALLENDER.

|181    173.|
|111a  ²413|

*Opinion filed October 13, 1899.*

1. PROPOSITIONS OF LAW—*a proposition of law should not ignore the evidence.* A proposition asked to be held as the law of the case is properly refused when it ignores a part of the evidence.

2. SAME—*a proposition of law not applicable to the facts found by the court is properly refused.* A proposition requested to be held as law in the decision of the case is properly refused when not applicable to the facts as found by the court.

3. ASSUMPSIT—*when action lies for money had and received.* An action for money had and received lies in favor of one who paid money against another who received it, with the mutual understanding that it be applied to a particular purpose, where the person receiving it failed to apply it to the agreed purpose but paid it to a third person who had no right to it.

*Gray* v. *Callender*, 81 Ill. App. 547, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

Gray, the appellant, purchased real estate in Peoria of one VanMarter, for which he gave his five promissory notes, of $4000 each, secured by mortgage on said real estate. Callender, the appellee, who was a banker and real estate agent, was VanMarter's agent in the transaction, and held the notes and mortgage, and collected from Gray and credited on the notes the interest for the first year. Callender, at VanMarter's request, had endeavored to sell or to borrow money on the notes but had not yet done so, when early in January, 1894, VanMarter came to Peoria and took the notes into his own hands but left the mortgage and insurance policies in the hands of Callender. Soon after, in the same month, VanMarter wrote Callender from New York to make no further effort to dispose of the notes, saying that he had arranged to put

them up as collateral. Afterward, in November, 1894, Callender sent two notices to Gray, the first to the effect that the interest ($1200) was due on the notes, and the second that one of the notes and the interest would be due November 16. Gray responded to the notices and went to Callender's office several times, taking with him the first time a check for $5200 with which to take up the note then due and to pay the interest, but as Callender did not have the notes he took the check away and returned a few days afterward with a check payable to Callender for the $1200, the amount of the interest only. Callender took the check and gave Gray VanMarter's receipt, signed by him (Callender) as agent, for the same, in full for the interest then due on the notes. Callender reserved $15 which VanMarter owed him for insurance, and, in compliance with a previous request by letter from VanMarter, forwarded the balance, $1185, to a bank at Tacoma, Washington, to be placed to VanMarter's credit, and it was so credited by the bank. At this time, however, VanMarter was not the holder of the notes, but had several months before assigned and delivered the notes to one Story, and had executed to Story an assignment of them and of the mortgage, which assignment Story had placed on record in the recorder's office of Peoria county, but neither Gray nor Callender knew of such a record. Story assigned the notes to his son, who afterward foreclosed the mortgage. Gray, in defense to that suit, set up the payment, as aforesaid, of the $1200 interest, but was defeated, and in the decree the full amount, principal and interest, was allowed against him. He then brought this suit against Callender to recover the $1200 which he had paid Callender as interest on the notes.

When Gray paid the $1200 to Callender he knew Callender did not have the notes but had delivered them to VanMarter, and the evidence tended to prove that he had the same information that Callender had that VanMarter had arranged to put them up as collateral security. It

further tended to prove that after Gray first called on Callender with his $5200 check with which to pay the interest and to take up the note then due, he concluded to obtain an extension of that note from VanMarter if he could do so, and then brought his check for $1200 and requested Callender to send it to VanMarter in payment of the interest, and to request an extension of the note.

The case was tried by the court without a jury and judgment rendered against the plaintiff for costs. The Appellate Court affirmed the judgment, and Gray then took his further appeal.

DAN R. SHEEN, for appellant.

STEVENS, HORTON & ABBOTT, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The trial court refused three propositions asked by the plaintiff to be held as law in the decision of the case, and in so deciding appellant alleges there was error. The first ignored the evidence that Callender sent the money to VanMarter at the request of Gray, and was therefore properly refused. The other two were abstract propositions of law, and were prefaced thus: "The court holds the law of this case to be," etc. Manifestly the court could not hold the proposition as *the law of the case* unless the facts as found made the proposition applicable, and as the court found the facts the second proposition was not applicable and therefore could not be "the law of the case." The third proposition was, we think, applicable to the $15 which Gray retained to pay an insurance debt which VanMarter owed him. The substance of Callender's contention, and of the holdings of the courts below, is, that he was not liable to Gray for the $1200 which he received from Gray with which to pay the interest on the notes, for the reason that Gray knew he did not then have the notes but that VanMarter had put them up as collateral, and that Gray requested

him, Callender, to send the money to VanMarter and to request an extension of the note then due. We must assume such to be the facts, and that Gray was willing to trust to VanMarter to see to the application of the money forwarded to him by Callender. That being so, Callender would not be liable to Gray for the failure of Van-Marter to make the application. Callender complied with Gray's request to the extent of sending to VanMarter $1185, but paid to himself the remaining $15 to discharge VanMarter's debt to him. The retention of the $15 was clearly a misapplication of that much of the money which Gray placed in his hands to be forwarded to VanMarter. Gray's purpose, as Callender knew, was to have the money applied to pay the interest he owed on the notes, and he was willing to trust VanMarter to so apply it whether he or some one else then held the notes, and Callender had no right or authority to retain or apply otherwise any part of it and was clearly liable to Gray for the amount retained. Suppose VanMarter had owed Callender the whole amount of $1200, and Callender, instead of remitting it to VanMarter to pay the interest, as understood between Gray and Callender, had applied it in payment of VanMarter's debt to him, could it be doubted that Callender would have been liable to Gray for the whole amount so retained or misappropriated? Callender's right to appropriate the money depended on its ownership by VanMarter, and as it turned out that VanMarter did not own it and had no right to it, Callender is liable to Gray for the amount retained by him. It is immaterial that it might as well have been lost to Gray had Callender remitted it all; as he did not apply the $15 as directed, and it was lost to Gray, he is liable for it. To that extent the third proposition was applicable and should have been held. It contained the correct proposition that where one person pays money to another with the mutual understanding that it is to be applied to a particular purpose, and the person so re-

ceiving the money fails to apply it to that purpose but pays it over to a third person who has no right to it, then an action for money had and received lies in favor of the party so paying the money, against the one receiving it from him.    *Drovers' Nat. Bank* v. *O'Hare,* 119 Ill. 646.

For the error indicated the judgments of the Appellate and circuit courts are both reversed and the cause remanded.

*Reversed and remanded.*